KIRBY AISNER & CURLEY LLP  
*Attorneys for Benjamin Eidlisz*  
700 Post Road, Suite 237  
Scarsdale, New York 10583  
(914) 401-9500  
Julie Cvek Curley, Esq.  
Email: jcurley@kacllp.com

Hearing Date: March 29, 2022  
Hearing Time: 9:30 a.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------X  
In re:

BRUCE SHERR,

        Debtor.  
------------------------------------------------------------X  
In re:

B&H VENTURES, LLC,

        Debtor.  
------------------------------------------------------------X

**NOT JOINTLY ADMINISTERED**

Chapter 11  
Case No. 22-22071-shl

Chapter 11  
Case No. 22-22084-shl

## OMNIBUS OBJECTION OF BENJAMIN EIDLISZ TO MOTIONS OF BRUCE SHERR AND B&H VENTURES, LLC FOR USE OF CASH COLLATERAL

**TO:** **THE HONORABLE SEAN H. LANE,**  
   **UNITED STATES BANKRUPTCY JUDGE:**

Benjamin Eidlisz ("**Eidlisz**"), a creditor and party in interest in the above-captioned chapter 11 cases, by and through his attorneys Kirby Aisner & Curley, LLP, hereby file this omnibus objection (the "**Objection**") to (i) the emergency motion and memorandum of Bruce Sherr ("**Sherr**") for expedited hearing on motion for authorization to use cash collateral on an interim and final basis, and (ii) the emergency motion and memorandum of B&H Ventures, LLC ("**B&H**") for expedited hearing on motion for authorization to use cash collateral on an interim and final basis (collectively, the "**Motions**"). In support of this Objection, Eidlisz respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The chapter 11 case of B&H involves a debtor in the business of purchasing, owning, subdividing into lots when possible, and selling lots and/or renovating homes. B&H owns sixty-nine (69) properties in Baltimore, Maryland (the "**Properties**"). Sherr's debts largely stem from his personal guaranties on the mortgages on the Properties. By these Motions, Sherr and B&H (collectively, the "**Debtors**") seek permission from this Court to use the rent receipts from the Properties. The Motions are a skeleton of what a cash collateral motion should be, void of any real substance, and thus should be denied on numerous grounds. First, the Motions fail to identify the secured creditors and the basis and extent of their security interests. Second, the Motions fail to set forth a budget for the intended use of the cash collateral. Third, the Motions fail to make any showing why an emergency use of cash collateral, without authorization from the secured creditors, would cause immediate and irreparable harm. Essentially, the Debtors are asking this Court to allow Sherr access to the rent roll from the Properties so he could pay necessary and appropriate operating expenses of the Properties, without any indication of what those expenses are, in what amount, and when they are due. Prior to the filing of these chapter 11 cases, Judge Eisenpress in Rockland Supreme Court directed that Sherr was only permitted to use the rent roll from the Properties for the necessary and ordinary operating expenses of B&H, but he completely and repeatedly disregarded the Supreme Court's order and instead chose to spend thousands of B&H's dollars for himself and his family, while failing to pay real estate taxes on the Properties, exposing some of the Properties to tax foreclosure sales. If the Motions are granted, Sherr will have access to rent receipts, currently in excess of $50,000, to spend at his own whim. Sherr has proven himself not to be an adept fiduciary and Eidlisz respectfully submits that the Motions must be denied.

**RELEVANT BACKGROUND**

2.      In or about 2017, Sherr and Eidlisz discussed a business venture whereby they acquire properties in Baltimore, Maryland, then develop the properties and "flip" them for a profit. They agreed that Eidlisz would manage the daily operations, and Sherr would guaranty the mortgages. Articles of Organization for B&H were filed with the Secretary of State of New York on May 22, 2017 under the name B&H Ventures LLC pursuant to the requirements of the New York Limited Liability Company Law, with Sherr and Eidlisz each having an equal fifty percent interest in B&H.

3.      Eidlisz operated B&H's business for three years, until October 2020 when Sherr improperly seized control of B&H, shut Eidlisz out of the business and bank accounts of B&H, and thereafter siphoned B&H's cash for his own personal use as well as the benefit of his family. In October, 2020 when Sherr usurped control of B&H's bank accounts, there was approximately $450,000 in the account, and Sherr immediately siphoned off more than $197,000 for his own personal benefit. A marked copy of the October 2020 bank statement is annexed hereto as **Exhibit A.**

4.      Sherr's misappropriations of B&H's monies and failure to use B&H's monies to pay the ordinary expenses, such as taxes, utilities, and mortgage obligations, causing B&H to default on the mortgages on its Properties and ultimately exposing the Properties to foreclosure proceedings.

5.      On January 8, 2021, to distract from his own misconduct, Sherr commenced an action against Eidlisz accusing Eidlisz of the very inappropriate acts he was committed in the Supreme Court of the State of New York, Rockland County, captioned *B&H Ventures LLC and Benjamin Sherr aka Bruce Sherr, individually and derivatively on behalf of B&H Ventures LLC*,

Index No. 030100/2021 (the "State Court Action").

6. Immediately upon commencing the State Court Action, Sherr filed an Order to Show Cause for a Preliminary Injunction and TRO seeking to prevent Eidlisz from taking an action on behalf of B&H and enjoining Eidlisz from interfering with the operation of B&H by Sherr. This request was for the sole purpose of preventing Eidlisz from discovering that Sherr continued to use B&H's monies for his own purposes. At the hearing held on January 20, 2021 (the "January 20th Hearing") on Sherr's request, the Court ordered that neither Eidlisz nor Sherr would have personal access to B&H's funds; rather, the Court stated that "any money that is obtained over that period of time, until this order is lifted, shall be held in escrow." *See*, January 20, 2021 Transcript annexed hereto as **Exhibit B**, 32:3–5. However, recognizing that many of B&H's Properties were subject to liens, the Court made an exception in that "expenses incurred in the ordinary course of the business should be paid" by Sherr. *Id.*, 32:12–13.

7. Further, at the January 20th Hearing, the Court ordered that both Sherr and Eidlisz were to refrain from engaging in any behavior outside the ordinary course of business of B&H, which included "negotiations, or contracting, or encumbering, or sale, or anything like that," without the consent of the other. *Id.*, 31:19–23.

8. Sherr used what he deemed to be a loophole to continue to act contemptuously and treat B&H like his cash cow, using the funds for the benefit of himself and his family. For example:

  a. February 5, 2021 and August 3, 2021 transfers in the aggregate amount of $4,500 to "Sandy", Sherr's sister;
  b. March 5, 2021 withdrawal in the amount of $2,000, without explanation;
  c. April 2, 2021 wire transfer in the amount of $5,000 to Sherr's son, Shmuel;
  d. April 2, 2021 wire transfer in the amount of $12,000 to Sherr's brother, Sam;
  e. April 30, 2021 payment in the amount of $503 to Capital One, on behalf of Sherr's son, Samuel;
  f. May 5, 2021 wire transfer in the amount of $5,000 to Sherr's son, Shmuel;

4

    g. May 2, 2021 wire transfer in the amount of $10,500 to Sherr's brother, Sam;

    h. Hundreds or thousands of dollars to "Jason Aguilar," "Joel," "Doug," "Fill," "Uzi," and "YK" which Eidlisz does not believe were for the benefit of B&H; and

    i. $35,000 and $1,717 to Law Offices of Michael A. Koplen for payment of a retainer for Sherr's Chapter 11 Case;[1] and

    j. $16,738 to Law Offices of Michael A. Koplen for payment of a retainer for B&H's unauthorized Chapter 11 Case.

Copies of some of these payments are annexed hereto as **Exhibit C.**

9. The above are just a few examples. When Eidlisz was able to review B&H's bank account statements, there were dozens of charges for things described as "Mobile Pmt," "Phone Pay," "Crcardpmt," "ACH Pmt," other unidentified "payment[s]", and dozens of transactions referencing Shmuel Sherr.

10. According to the IRS 1099 form issued by Empire Property Management, the Properties generated more than $1.1 million in rental income. A copy of the 1099 is annexed hereto as **Exhibit D.** In addition to those funds, one of the properties were sold yielding over $78,000 to B&H. See HUD Statement and corresponding bank statement, annexed hereto as **Exhibit E.** Sherr had access to these monies, and did not pay the ordinary expenses of B&H, instead he misappropriated the monies for his own benefit.

11. Sherr's mismanagement, misappropriation, embezzlement and other misuse of B&H's funds caused B&H to default on numerous obligations, incurring fees, triggering lawsuits by creditors, and requiring B&H to defend impending mortgage and property tax foreclosures. Some of the lawsuits include (collectively, the "**Creditor Lawsuits**"):

- *Substitute Trustee's Sale of Eight (8) Properties Located in Baltimore City,* Maryland by Benjamin P. Smith, Substitute Trustee, File No. 131638.00014;

- Isaac *Schwimmer v. B&H Ventures LLC and Ben Sherr*, Supreme Court of the State of

---

[1] Sherr, and his attorney both try to hide this fact by falsifying Sherr's Statement of Financial Affairs and the Rule 2016 Disclosure of Compensation of Attorney for Debtor to omit disclosing the payment by B&H.

5

New York, Rockland County Index No. 030804/2021;

- *Aron Rottenberg v. B&H Ventures LLC and Ben Eidlisz*, Supreme Court of the State of New York, Rockland County Index No. 036292/2021;

- *Jacob Rottenberg v. B&H Ventures LLC and Ben Eidlisz*, Supreme Court of the State of New York, Rockland County Index No. 030027/2021; and

- *Zachary Liebman v. B&H Ventures LLC, Benjamin Sher a/k/a Bruce Sherr and Ben Eidlisz*, Supreme Court of the State of New York, Rockland County Index No. 032824/2021.

12. Sherr has not only wholly neglected his fiduciary duties to B&H, but he contemptuously defied the State Court's clear directive on numerous occasions, in order to enrich himself.

13. Notwithstanding that it was open and notorious that (i) Sherr was only permitted to pay ordinary expenses of B&H, and (ii) Sherr was prohibited from taking any actions outside the ordinary course, Sherr paid to the Law Office of Michael Koplen[2] a total of $36,717 from B&H in connection with his filing of Sherr's chapter 11 case, and $16,738 from B&H to file its chapter 11 case.

14. The acceptance of these retainer payment and the filings of these chapter 11 cases are inappropriate for so many reasons:

- First, Sherr had no authority to use B&H's funds to pay Koplen $36,717 for his own personal chapter 11 filing and the payment is a fraudulent conveyance.

- Second, Sherr had no authority to file a chapter 11 petition on behalf of B&H since the filing is clearly outside the scope of the ordinary course of business.

- Third, the payment to Koplen in the amount of $16,738 is not an ordinary course of business expenses that Sherr was permitted to pay.

---

[2] Law Office of Michael Koplen has failed to file any retention pleadings in either of the Chapter 11 Cases and Eidlisz reserves all rights to object to any retention pleadings and payment of the retainers. Eidlisz notes that the payment for Sherr's Chapter 11 Case must be disgorged and returned as (1) it is a fraudulent conveyance, and (2) the payment is outside the scope of what Sherr was permitted to pay from B&H's bank accounts. In addition, the payment for B&H's Chapter 11 Case must be disgorged and returned because the Law Office of Michael Koplen is conflicted from representing B&H in its Chapter 11 Case.

6

- Fourth, Koplen is conflicted from representing both Sherr and B&H simultaneously in their respective chapter 11 cases.

15. Notwithstanding the foregoing, on February 16, 2022, Sherr filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Sherr Chapter 11 Case**"), and on February 22, 2022 Sherr filed an unauthorized petition on behalf of B&H for relief under Chapter 11 of the Bankruptcy Code (the "**B&H Chapter 11 Case**", together with the Sherr Chapter 11 Case, the "**Chapter 11 Cases**").

16. The Debtors have failed to appear and participate in the Initial Debtor Interview and Section 341(a) Meeting of Creditors conducted by the Office of the U.S. Trustee.

17. Sherr attempted to gain access to B&H's cash from the property manager, Empire Management, and use those proceeds without authorization from this Court, or the secured creditors. However, Eidlisz was able to intervene and due to Eidlisz's efforts, those monies are not being held in the escrow account of Empire Management's counsel.

18. It was not until after it was brought to the attention of the Court, that the Debtors filed the Motions seeking permission to use cash collateral. However, the Motions failed to identify the secured creditors' bases for their respective security interest, the identification of their collateral, a cash flow statement or budget showing the anticipated use of the cash collateral, and a declaration in support of the relief setting forth why the request is necessary for the preservation of the Debtors' estate and creditors.

## **ARGUMENT**

19. The Motions should be denied in their entirety because the Debtors fail to meet the minimum requirements set forth in Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

20. Bankruptcy Rule 4001(b)(1)(A) requires that cash collateral motions (including

7

emergency motions), should (i) be accompanied by a proposed form of order, which ordinarily should be attached as an exhibit to the motion, (ii) the motion and/or order should include, as an attachment, a summary of projected revenue and a line item expense budget during the proposed cash collateral period, and (iii) the budget ordinarily should be weekly for emergency motions and monthly for other motions.

21. The Motions fail to attach a proposed order or a budget. Instead, quite offensively, the Debtors request "that the Court make an order".

22. Further, Bankruptcy Rule 4001(b)(2) provides that the Court will hold an emergency hearing on use of cash collateral, if needed, to consider authorizing use of cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

23. The Motions do not address why the use of cash collateral is necessary and immediately required. Typically, cash collateral motions with be filed with a supporting declaration from the debtor's representative setting forth why the use of cash collateral is necessary. No declaration was attached to the Motions.

24. The Bankruptcy Court for the Southern District of New York promulgated Local Rule 4001-2 which sets forth in explicit detail, what needs to be included in a motion for use of cash collateral. Again, this provision seems to be entirely ignored.

25. Based upon the foregoing, the Debtors have failed to establish any basis that would entitle them to use cash collateral, and the Motions must be denied.

[The remainder of this page is intentionally left blank.]

## **CONCLUSION**

**WHEREFORE,** Eidlisz respectfully requests that the Court (i) deny the Motions in their entirety, and (ii) direct Empire Management to retain the rents, together with such other and further relief as is just and proper under the circumstances.

Dated:  Scarsdale, New York
         March 28, 2022

                                                    KIRBY AISNER & CURLEY, LLP
*Attorneys for Benjamin Eidlisz*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500

By: */s/ Julie Cvek Curley*
       Julie Cvek Curley

9