KIRBY AISNER & CURLEY LLP  
*Attorneys for Benjamin Eidlisz*  
700 Post Road, Suite 237  
Scarsdale, New York 10583  
(914) 401-9500  
Julie Cvek Curley, Esq.

Hearing Date: *April 7, 2022*  
Hearing Time: *2:00 p.m.*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-------------------------------------------------------------X  
In re:

BRUCE SHERR,

          Debtor.  
-------------------------------------------------------------X  
In re:

B&H VENTURES, LLC,

          Debtor.  
-------------------------------------------------------------X

NOT JOINTLY ADMINISTERED

Chapter 11  
Case No. 22-22071-shl

Chapter 11  
Case No. 22-22084-shl

**OMNIBUS MOTION OF BENJAMIN EIDLISZ SEEKING (I) AUTHORIZATION AND APPROVAL OF THE SETTLEMENT STIPULATION BY AND BETWEEN DEBTORS, BENJAMIN EIDLISZ, BGT 14 LLC, AND SCHNEUR LEVERTOV, and (II) FOR <u>ENTRY AN ORDER DISMISSING CHAPTER 11 CASES</u>**

**TO: THE HONORABLE SEAN H. LANE,**  
    **UNITED STATES BANKRUPTCY JUDGE:**

Benjamin Eidlisz ("Eidlisz") by his attorneys Kirby Aisner & Curley, LLP, hereby file this omnibus motion ("Motion") for (1) authorization and approval of the Settlement Agreement (the "Agreement") by and between Bruce Sherr, the above captioned debtor and debtor-in-possession ("Sherr"), B&H Ventures, LLC ("B&H", together with Sherr, the "Debtors"), Eidlisz, BGT 14 LLC, and Schneur Levertov, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP"); and (2) an Order dismissing the Debtors' Chapter 11 proceedings pursuant to §§ 105,

305 and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). In support of this Motion, Eidlisz respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are §§ 105(a), 305 and 1112(b) of the Bankruptcy Code and FRBP Rule 9019.

## BACKGROUND

4. On February 16, 2022, Sherr filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Sherr Chapter 11 Case"), and on February 22, 2022 Sherr filed a voluntary petition on behalf of B&H for relief under Chapter 11 of the Bankruptcy Code (the "B&H Chapter 11 Case", together with the Sherr Chapter 11 Case, the "Chapter 11 Cases").

5. The Debtors have continued in possession of their property and the management of their business affairs as debtors-in-possession pursuant to §§ 1107(a) and 1108 of Chapter 11 of the Bankruptcy Code.

6. No trustee, examiner or statutory committee has been heretofore appointed in these proceeding.

7. Sherr is an individual residing at 5 Hayes Court, Stony Point, New York 10980.

8. B&H a New York limited liability company with an office located at 5 Hayes Court, Stony Point, New York 10980. B&H was formed for the purpose of purchasing, owning, subdividing into lots when possible, and selling lots and/or renovating homes. There various iterations of Operating Agreements existing for B&H including: (i) LLC Operating Agreement

dated May 22, 2017 whereby Sherr holds the sole membership interest in B&H, and (ii) Operating Agreement dated May 26, 2017 whereby Sherr and Eidlisz each hold a 50% membership interest in B&H, which is signed by both Sherr and Eidlisz.

9. Pursuant to the LLC Operating Agreement of BGT dated January 22, 2019, Sherr and Eidlisz are each 25% interest holders in BGT 14 LLC ("BGT"), together with Schneur Levertov ("Levertov") who holds the remaining 50% interest in BGT. BGT is also in the business of purchasing, owning, subdividing into lots when possible, and selling lots and/or renovating homes.

10. Together, B&H and BGT own seventy-nine (79) properties located in Baltimore, Maryland (the "Properties"). The Properties are all subject to mortgages. Each of the mortgages cover several of the Properties. Some of the mortgage loans are secured only B&H owned Properties, and other of the mortgage loans are secured by both B&H and BGT Properties. Sherr personally guaranteed the mortgage loans on the Properties.

11. Beginning in or about January 2021, contentious litigation commenced between Sherr and Eidlisz regarding the management of B&H's affairs in the Supreme Court of the State of New York, Rockland County, captioned *B&H Ventures LLC and Benjamin Sherr aka Bruce Sherr, individually and derivatively on behalf of B&H Ventures LLC v. Benjamin Eidlisz*, Index No. 030100/2021 (the "State Court Action"), and related thereto, a proceeding pending in the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, captioned *B&H Ventures LLC et ano v. Benjamin Eidlisz,* Docket No. 2021-04695 (the "State Court Appeal").

12. Without getting into the details, in the State Court Action, both Sherr and Eidlisz accused each other of mismanagement and various bad acts, which both Sherr and Eidlisz dispute

3

and do not concede. However, as a result of the inability for Sherr and Eidlisz to cooperate and manage the Properties together, the mortgages on the Properties fell into default and the real estate taxes are in arrears, such that pre-petition tax foreclosure sales were scheduled.

13. Numerous lawsuits have been commenced against Sherr, Eidlisz, and/or B&H in Supreme Court State of New York - Rockland County, Circuit Court for Baltimore City, and Bais Din (a rabbinical Court of Judaism) (the "<u>Lawsuits</u>").[1]

14. The Chapter 11 Cases were filed to stay the pending Lawsuits.

15. Following the commencement of the Chapter 11 Cases, the Parties engaged in extensive and productive settlement discussions, which culminated in the Agreement.

## **RELIEF REQUESTED AND BASIS FOR RELIEF**

A. **Request for Approval of the Stipulation Pursuant to FRBP 9019**

16. In order to resolve all outstanding claims and litigation between Sherr, B&H, Eidlisz, BGT 14, and Levertov (collectively, the "<u>Parties</u>"), after substantial negotiations, the Parties entered into the Agreement, annexed hereto as **Exhibit "A."** The salient provisions of the Stipulation are as follows:

   a. Sherr shall (i) transfer all of his right, title and interest in and to his membership interest in B&H and BGT to Eidlisz, (ii) resign from B&H and BGT as an officer, director, and/or employee, and (iii) cooperate with Eidlisz, B&H and BGT to execute and deliver any documents as necessary to implement the Agreement, including turnover of cash, bank account statements, books and records, and closing all credit cards.

   b. In consideration for Sherr's transfer of his membership interest to Eidlisz, Sherr will be indemnified for all costs, expense, and or liabilities incurred in the event that a creditor of B&H recovers from Sherr under any of the Personal Guaranties. **This indemnification does not alter the rights of any creditors to pursue their respective claims against any of the Parties, rather it provides for an agreement between the Parties**

---

[1] The Lawsuits are set forth in Exhibit F to the Agreement.

4

**regarding responsibility to each other for any liablity.**

c. The State Court Action and State Court Appeal will be discontinued, with prejudice.

d. Mutual general releases will be exchanged between and among Sherr on the one hand, and Eidlisz, B&H and BGT on the other hand, except for claims related to criminal conduct. **Similar to the indemnification, the releases do not alter the rights on any creditors to pursue their respective claims against any of the Parties.**

e. Dismissal of the Chapter 11 Cases.

f. Return of the $53,455.00 retainer payment made to Koplen Law Firm to held in the IOLA account of Kirby Aisner & Curley LLP.

17. The above is intended to be only a summary of the more salient terms of the Agreement, and the Parties respectfully refer the Court and all parties to the Agreement for its complete terms and conditions.

18. FRBP Rule 9019(a) permits this Court to approve a compromise or settlement. The Rule provides:

> *(a) Compromise.* On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

19. Neither FRBP Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established in the case law, focusing upon whether the proposed settlement is reasonable and in the best interests of creditors. *See, Protective Committee v. Anderson*, 390 U.S. 414 (1968), *reh'g denied,* 391 U.S. 909 (1968).

20. In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interests of creditors, courts in the Second Circuit follow the analysis first articulated

5

by the Supreme Court in *Anderson,* as developed and applied by the case law. Thus, courts assess a proposed settlement based upon a consideration of some or all of the following factors:

    (i)    the relative benefits to be received by creditors under the proposed settlement;

    (ii)    the likelihood of success in the litigation compared to the present and future benefits offered by the proposed settlement;

    (iii)    the prospect of complex and protracted litigation if settlement is not approved;

    (iv)    the attendant expense, inconvenience and delay of litigation;

    (v)    the probable difficulties of collecting on any judgment that might be obtained;

    (vi)    the competency and experience of counsel who support the proposed settlement;

    (vii)    the extent to which the settlement is the product of arm's-length bargaining, and not the product of fraud or collusion;

    (viii)    the nature and breadth of any releases to be issued as a result of the proposed settlement; and

    (ix)    the paramount interest of the creditors and proper deference to their reasonable views.

*See, City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 427 (S.D.N.Y. 1993); *In re Purified Down Products Corp.,* 150 B.R. 519, 522 (S.D.N.Y. 1993); *In re International Distribution Centers, Inc.,* 103 B.R 420, 422 (S.D.N.Y. 1989); *In re Fugazy,* 150 B.R. 103,106 (Bankr. S.D.N.Y. 1993); *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991); *In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990); *In re Texaco, Inc.,* 84 B.R.893, 901 (Bankr. S.D.N.Y. 1988); *In re Lion Capital Group, Inc.,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *In re Carla Leather, Inc.,* 44 B.R.457, 466 (Bankr. S.D.N.Y. 1984), *aff'd* 50 B.R. 764 (S.D.N.Y. 1985);

*In re W.T. Grant Co.,* 4 B.R. 53,69 (Bankr. S.D.N.Y.). *aff'd,* 20 Bankr. 186 (S.D.N.Y.), *aff'd,* 699 F. 2d 599 (2d Cir. 1983), *cert. denied sub nom. Cosoff v. Rodman*, 464 U.S. 822 (1983). *See also In re Jackson Brewing Co.,* 624 F. 2d 599, 602 (5th Cir. 1980).

21.    In evaluating the propriety of a settlement in concert with the foregoing factors, the court need not conduct a trial, "mini-trial," or "a rehearsal of the trial" on the merits to actually resolve the extant factual and legal issues, but must simply consider whether against the background of those issues, the settlement is reasonable. *Newman v. Stein*, 464 F. 2d 689, 692 (2d Cir. 1972), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972). *See also, International Distribution,*103 B.R. at 423; *Drexel Burnham*, 134 B.R. at 496. In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See, Anderson,* 390 U.S. at 444; *Purofied Down Products*, 150 B.R. at 519, 524; *International Distribution Centers*, 103 B.R. at 423.

22.    The settlement evaluation process is not designed to substitute the court's judgment for that of a trustee. *Carla Leather*, 44 B.R. at 465. While the Court is not expected to "rubber stamp" a proposed settlement, the Court should give considerable weight to the informed judgment of the Debtor that the compromise is fair and equitable and the support of the Committee to the settlement, *See, Anderson*, 390 U.S. at 444; *Ionosphere,* 156 B.R. at 426; *International Distribution Centers,* 103 B.R. at 423; *Drexel,* 134 B.R. at 496; *Carla Leather,* 44 B.R. at 472. As articulated by the district court in *International Distribution Centers*, the Court should give weight to the support not only of the Debtor's counsel but of other counsel to a settlement in determining the wisdom of the compromise. *International Distribution Centers*, 103 B.R. at 423.

7

23. Eidlisz submits that approval of the Agreement is in the best interests of the Debtors' estates and creditors because it represents a good faith and arm's length negotiated settlement of claims. The Parties and their respective counsel submit that the settlement set forth in the Agreement provides several significant benefits to the Debtors' estate.

24. The Chapter 11 Cases present several hurdles. First, the formal retention under Section 327 of the Bankruptcy for the counsel of record for B&H is likely not to be approved since counsel cannot simultaneously represent both Sherr and B&H. This would leave the B&H in a position where it is without counsel. Further, since pre-petition the ownership and management of B&H was disputed, it is unlikely that either Sherr or Eidlisz will agree to either party managing B&H as a debtor in possession. The result of these issue would likely lead the B&H Chapter 11 Case to being converted to a chapter 7 proceeding, or the appointment of a chapter 11 trustee. Both of those alternatives present administrative costs, which very likely will erode the any recovery the secured creditors have in the Properties. Eidlisz has already prepared a business plan to quickly, efficiently, and cost-effectively liquidate the Properties, including obtaining purchasers for some of the Properties so that the secured creditors are quickly paid down and no longer in default.

25. Another benefit to the Agreement is that it provides for a discontinuance of the State Court Action and State Court Appeal. The Parties have expended significant time, energy, and money fighting with each other, without any meaningful progress or resolution in the future. Discontinuance of the State Court Action and State Court Appeal will put an end to the stressful and costly litigation for all Parties.

26. The Agreement is the product of arm's length negotiations between the Parties and their respective counsel.

8

27. Lastly, the Agreement provides for the exchange of releases between the Parties. The granting of releases in connection with a settlement of claims is left to the trustee's business judgment. *See, e.g., Morley v. Ontos, Inc. (In re Ontos, Inc.)*, 478 F.3d 427, 433 (1st Cir. 2007) (affirming decision approving stipulation containing release of claims by trustee in connection with settlement of claims); *Krohn v. Lawlor,* 2007 U.S. Dist. LEXUS 66763, 2007 WL 2687663 (E.D.N.Y. September 10, 2007) (approving settlement agreement in which the trustee granted releases.). It is quite likely that a settlement would not occur without mutual releases, and mutual releases bring certainty to the Parties. The Parties believe the proposed releases are both necessary and appropriate.

28. Based upon the foregoing, Eidlisz submits that approval of the Agreement is in the best interests of the Debtors, their creditors and their estate and falls well above the lowest level of reasonableness.

**B.     Request for Dismissal of the Chapter 11 Cases**

29. From the outset of the Chapter 11 Cases, there have been significant, perhaps insurmountable issues.

30. Based upon record of the State Court Action, Eidlisz asserts that (i) Sherr did not have authority to file the B&H Chapter 11 Case, and (ii) Sherr did not have authority to render any of the retainer payments, which assertion is disputed by Sherr.

31. The Debtors have failed to appear and participate in the Initial Debtor Interview and Section 341(a) Meeting of Creditors conducted by the Office of the U.S. Trustee.

32. Not until after it was brought to the attention of the Court, did B&H file a motion to use cash collateral even though Sherr tried on numerous occasions to obtain access to B&H's cash from its property management company, Empire Management. But for the efforts of Eidlisz counsel,

9

Sherr would have had access to those monies, and possibly used those monies without authorization. In an attempt to remedy this very serious issue, the Debtors filed an emergency cash collateral motion; however, the motion failed to identify the secured creditors' bases for their respective security interest, the identification of their collateral, a cash flow statement or budget showing the anticipated use of the cash collateral, and a declaration in support of the relief setting forth why the request is necessary for the preservation of the Debtors' estate and creditors.

33. As of the date of this Motion, the Debtors do not have authority to use cash collateral.

34. Further, Michael Koplen has represented to this Court that Sherr has requested that he withdraw as counsel.

35. Pursuant to § 305(a)(1) of the Bankruptcy Code, "[t]he court, after notice and a hearing, may dismiss a case …at any time if – the interests of creditors and the debtor would be better served by such dismissal."

36. Given all of the issues set forth above that are presented in the continued administration of the Chapter 11 Case, and the cost of administering the estates, which would deteriorate and erode the Debtors' assets, Eidlisz submits that cause exists to dismiss the Chapter 11 Cases pursuant to §305(a)(1) of the Bankruptcy Code.

37. Alternatively, and in addition, Section 1112(b)(1) of the Bankruptcy Code, on request of a party in interest, and after notice and a hearing, the Court **shall** convert or dismiss a bankruptcy case "for cause," whichever is in the best interest of creditors and the estate. 11 U.S.C. §1112(b)(1). Upon a finding of "cause," the court **must** dismiss or convert a Chapter 11 case absent unusual circumstances. *See, In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560 (Bankr. M.D.Pa. 2007) ("amendments to § 1112 limit the Court's discretion to refuse to dismiss or convert a Chapter 11 case upon a finding of cause"); *In re TCR of Denver, LLC* 338 B.R. 494,

498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversation or dismissal, such that this Court has no choice, and no discretion in that it '**shall**' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)") (emphasis added). Eidlisz submits that dismissal is appropriate.

38. Section 1112(b)(4) of the Bankruptcy Code provides a nonexclusive list of 16 grounds for dismissal. 11 U.S.C. §1112(b)(4)(A)-(P). *See, Gateway Access*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise'") (quoting *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)); *accord, In re Frieouf*, 938 F.2d 1099, 1102 (10th Cir. 1991) (Section 1112(b)'s list is non-exhaustive).

39. Even at this nascent stage of this Chapter 11 Cases, numerous of the factors set forth in Section 1112(b)(4) have been met and warrant dismissal.

40. Section 1112(b)(4)(A) provides that a cause exists for dismissal when there is an "absence of a reasonable likelihood of rehabilitation." Given the dispute between Sherr and Eidlisz, there is no conceivable scenario where they could cooperation with management of B&H, which would in turn require a third party, possibly a chapter 11 trustee, to step in. The administrative costs of a chapter 11 trustee could be prohibitive and possibly cause the estate to be administratively insolvent, thus suggesting that there would be no ability to rehabilitate or reorganize.

41. Section 1112(b)(4)(B) provides that a cause exists for dismissal when there is "gross mismanagement of the estate." This exists given the failure to timely file a request for use of cash collateral, and when the request was made, the request was wholly inadequate and deficient.

11

42. While the Debtors do not have access to cash collateral (thanks to the efforts of Eidlisz), there was the attempted unauthorized use of cash collateral, which would establish cause under Section 1112(b)(4)(D).

43. The Debtors failure to appear at the Initial Debtor Interviews or appear at the 341(a) Meetings of Creditors establish cause for dismissal under Sections 1112(b)(4)(G) and (H).

44. Thus, numerous bases of cause exists under Section 1112(b)(4) and Eidlisz submits that dismissal is appropriate.

45. Eidlisz further submits that as a condition to the dismissal of the Chpater 11 Cases:

   a. The Debtors shall file declarations of disbursements;

   b. Pay all outstanding United States Trustee fees in full; and

   c. Koplen Law Firm return the retainer payments in the amount of $53,455 to the IOLA escrow account of Kirby Aisner & Curley LLP.

46. In light of the foregoing reasons Eidlisz believes that cause exists to dismiss the Chapter 11 Cases.

## REQUEST FOR HEARING ON SHORTENED NOTICE

47. Eidlisz submits that the relief requested in the Motion is necessary. The Debtors are without counsel. While Sherr can represent himself *pro se*, B&H cannot. Further, the Debtors have no authority to use cash collateral. Simply stated, the Chapter 11 Cases cannot proceed in the current posture for the full twenty-one (21) day notice period required under FRBP 2002. Therefor respectfully request entry of an Order scheduling a hearing to consider the Motion on expedited notice.

48. The Federal Rules of Bankruptcy Procedure provide for a shortening of time under certain circumstances. Federal Rule of Bankruptcy Procedure 9006(c) provides as follows:

      (c) *Reduction.*

      (1) *In General*. Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.

      (2) *Reduction Not Permitted*. The court may not reduce the time for taking action under Rules 2002 (a)(4) and (a)(8), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

49.    Thus, the Federal Rules of Bankruptcy Procedure specifically authorize the Court to hear an application such as the Motion at issue herein on shortened notice, for cause shown.

50.    Based upon the foregoing, Eidlisz respectfully submit that sufficient cause exists for scheduling a hearing on shortened notice to consider the Motion.

**WHEREFORE,** Eidlisz respectfully requests that the Court (i) enter an Order approving the Agreement, and (iii) enter an Order dismissing the Chapter 11 Case, together with such other and further relief as is just and proper under the circumstances.

Dated: Scarsdale, New York
       March 31, 2022

                                KIRBY AISNER & CURLEY, LLP
                                *Attorneys for Benjamin Eidlisz*
                                700 Post Road, Suite 237
                                Scarsdale, New York 10583
                                (914) 401-9500

                                By: */s/ Julie Cvek Curley*
                                      Julie Cvek Curley